UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

FEB 2 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

```
                                    )
UNITED STATES OF AMERICA,           )
                                    )
        v.                          )
                                    )    Criminal Action No. 03-488 (RWR)
SIROCCO JOHNSON,                    )
                                    )
        Defendant.                  )
                                    )
```

### MEMORANDUM OPINION AND ORDER

After being found guilty of narcotics and firearm offenses, Sirocco Johnson filed a motion for judgment of acquittal, or in the alternative, a new trial, and a second motion for a new trial alleging that the government failed to disclose exculpatory Brady material. Because the evidence when viewed in the light most favorable to the government permitted a reasonable fact-finder to find the essential elements of all the offenses of which Johnson was convicted, and the undisclosed information was not material, Johnson's motion for judgment of acquittal or a new trial and his second motion for a new trial will be denied.

### BACKGROUND

Johnson was charged by indictment with unlawful possession with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii) (Count One), unlawful possession with intent to distribute 100 grams or more of heroin, in violation 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(i) (Count Two), unlawful possession with intent to

distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and
(b)(1)(D) (Count Three), and using, carrying and possessing a
firearm during and in furtherance of a drug trafficking offense,
in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Four).

The government introduced evidence during the two-day trial
showing that on August 21, 2003, during the early morning hours,
a team of FBI agents announced their presence at 1138 Wahler
Place, S.E., Washington, D.C., entered the residence, and
executed a search warrant.  As the team was entering the
residence, agents positioned outside witnessed what appeared to
be a white tee-shirt, later determined to contain a gun in it,
thrown from a second floor window which was the only second story
window on the side of the house.  (Trial Tr., Apr. 4, 2005, at
138-39.)  The agents later recovered a white tee shirt, a loaded
9-millimeter handgun and 24.3 grams of marijuana inside a clear
plastic bag within a foot of each other on the ground beneath
that window.

Inside the residence, agents located Johnson's mother and
stepfather in the master bedroom, and Johnson and an unidentified
juvenile wearing a tee-shirt and shorts in a second bedroom on
the second floor.  Johnson, clad only in boxer shorts, was found
next to a damaged window that appeared to be the same window from
which the tee-shirt was thrown.  After conducting a protective
sweep of the room, agents recovered three clear plastic bags

-3-

containing 72.8 grams of crack cocaine, a Nike box containing,
among other things, 519.5 grams of heroin, cutting agents, glass
bottles, documents and personal mail bearing Johnson's name,
clothing, $490 in cash, three watches, and three cellular phones.
Johnson moved for judgment of acquittal on all counts at the
close of the government's evidence, claiming that the government
had failed to show that he exercised power and control over the
narcotics located in the room.  Johnson's motion was denied.

During its closing argument, the government claimed that
Johnson constructively possessed the drugs and illicit objects
found during the bedroom search and that Johnson threw the
handgun and marijuana out of the window.  The government cited
the presence of mail and the clothing in the bedroom in which
Johnson was found as evidence that he occupied and controlled the
room.  The government also maintained that the high street value
of the narcotics located in Johnson's bedroom, the large amount
of narcotics, and Johnson's proximity to the window from which
the gun, tee shirt and marijuana were thrown, established that he
possessed the drugs with intent to distribute them and possessed
the gun in furtherance of a drug trafficking offense.  Johnson
stipulated that he owned some of the articles of clothing and
mail in the room in which he was found.  Johnson also did not
contest the quantity of the narcotics retrieved or that it showed
an intent to distribute them.  However, Johnson maintained that

-4-

he neither occupied or controlled the bedroom in which he was found nor constructively possessed the narcotics or the gun. Johnson claimed that the government's argument relied solely on the circumstantial evidence of his presence at the scene and the inference that he disposed of the gun.

The jury convicted Johnson of the cocaine, heroin and firearm counts, and acquitted him of the marijuana count. He moved for judgment of acquittal, or alternatively, a new trial alleging insufficiency of evidence on each count for which he was convicted. Later, he filed a second motion for a new trial arguing that the government failed to turn over evidence that should have been disclosed under Brady v. Maryland, 373 U.S. 83 (1963).

DISCUSSION

I.   MOTION FOR JUDGMENT OF ACQUITTAL

A defendant may renew a motion for judgment of acquittal after a guilty verdict has been returned. See Fed. R. Crim. P. 29(c). In reviewing a post-verdict motion for judgment of acquittal, a court "must view the evidence in the light most favorable to the verdict." United States v. Campbell, 702 F.2d 262, 264 (D.C. Cir. 1983). Such a motion for judgment of acquittal should be denied when, considering the evidence in the light most favorable to the verdict, the evidence is "sufficient to permit a rational trier of fact to find all the essential

elements of the crime beyond a reasonable doubt." <u>United States</u>
<u>v. Morrow</u>, Crim. Action No. 04-355, 2005 WL 1389256, at *3
(D.D.C. June 13, 2005) (quoting <u>United States v. Kayode</u>, 254 F.3d
204, 212 (D.C. Cir. 2001)); <u>see</u> 2A Charles Alan Wright et al.,
<u>Federal Practice & Procedure: Criminal</u> § 466 (3d ed. 2000)
("There is only one ground for a motion for a judgment of
acquittal.  This is that the evidence is insufficient to sustain
a conviction of one or more of the offenses charged in the
indictment or information." (footnote and internal quotations
omitted)).  The trial court must give "full play to the right of
the jury to determine credibility, weigh the evidence and draw
justifiable inferences of fact." <u>United States v. Treadwell</u>, 760
F.2d 327, 333 (D.C. Cir. 1985) (quoting <u>United States v. Davis</u>,
562 F.2d 681, 683 (D.C. Cir. 1977)); <u>see also United States v.</u>
<u>Schaffer</u>, 183 F.3d 833, 840 (D.C. Cir. 1999), <u>vacated on other</u>
<u>grounds</u>, 240 F.3d 35 (D.C. Cir. 2001) ("Unless we conclude that
no reasonable jury could have found guilt beyond a reasonable
doubt on the evidence presented, we defer to its
determinations.").  Typically, the jury's determination will
stand unless no reasonable juror could have found a defendant
guilty beyond a reasonable doubt.

When reviewing the trial record, a court must accord the
government "the benefit of all legitimate inferences." <u>United</u>
<u>States v. Singleton</u>, 702 F.2d 1159, 1163 (D.C. Cir. 1983).  "The

-6-

evidence in question 'need not exclude every reasonable

hypothesis of innocence or be wholly inconsistent with every

conclusion except that of guilt.'" Morrow, 2005 WL 1389256, at

*4 (quoting United States v. Maxwell, 920 F.2d 1028, 1035 (D.C.

Cir. 1990)).  Further, the type of evidence used in trial is not

dispositive for the purposes of a Rule 29 motion.  "No

distinction is made between direct and circumstantial evidence in

evaluating the sufficiency of evidence supporting a guilty

verdict."  Maxwell, 920 F.2d at 1035.  When ruling on a motion

for judgment of acquittal made after trial, the court must look

at the entire record.  United States v. Byfield, 928 F.2d 1163,

1166 (D.C. Cir. 1991).

A.   Narcotics convictions

Johnson claims that the evidence was not sufficient to prove

that he constructively possessed the narcotics.  He notes that

numerous other individuals regularly "hung out" in the bedroom in

question and that on the day of his arrest, a juvenile was also

found there.  (See Def.'s Mem. P. & A. in Supp. of Mot. for J. of

Acquittal ("Def.'s Mem.") at 4 n.2.)  He argues that "joint

occupancy is insufficient by itself to establish constructive

possession."  (Id. at 3-4.)  Johnson insists that even if the

drugs were found in a bedroom that he frequented, there is no

evidence showing that he knew of and exercised control over the

concealed heroin and cocaine, or evidence of any extra factor that could link him to the drugs.

"A conviction based on constructive possession requires evidence that the defendant 'had the ability to exercise knowing dominion and control' over the drugs." United States v. Edelin, 996 F.2d 1238, 1241 (D.C. Cir. 1993) (quoting United States v. Morris, 977 F.2d 617, 619 (D.C. Cir. 1992)); see United States v. Foster, 783 F.2d 1087, 1089 (D.C. Cir. 1986) (requiring that "where . . . contraband is discovered in a place occupied by more than one person," the evidence must show that defendant has a "*substantial* voice vis-a-vis the contraband").  A jury is entitled to infer that a person exercises constructive possession over items found in his home "even when that person shares the premises with others." Morris, 977 F.2d at 620.[1]  However, mere knowledge of the items or simple proximity to them is not sufficient to find constructive possession of them; "[t]here must be some action, some word, or some conduct that links the

_____

[1]     Johnson cites United States v. Bonham, 477 F.2d 1137 (3d Cir. 1973) to claim that knowledge of drugs found concealed in the bedroom where Johnson and a juvenile were present may not be imputed to Johnson without more evidence.  However, in Bonham, police found narcotics in a room that was the shared bedroom of two adult brothers.  Here, although other family members used the bedroom, there is no contention that those family members regularly stayed in that room.  (See Trial Tr., Apr. 6, 2005, vol. 1, at 42-43 ("Q: Aside from occasionally sleeping there, what else did they do in this room? . . . Was it [the other family members'] principal residence?  Was it the principal place where they laid their heads? . . . Witness: No.").)

-8-

individual to the illegal items and indicates that he had some stake in them, some power over them." Edelin, 996 F.2d at 1241 (internal quotations and citation omitted); accord United States v. Clark, 184 F.3d 858, 864 (D.C. Cir. 1999) ("[N]either knowledge nor proximity [of the contraband] alone is sufficient to permit a jury to infer possession."). "'[E]vidence of some other factor -- including connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise  -- coupled with proximity may' suffice." United States v. Moore, 104 F.3d 377, 381 (D.C. Cir. 1997) (quoting United States v. Gibbs, 904 F.2d 52, 56 (D.C. Cir. 1990)).

Generally, courts analyze evidence of a defendant's link to the contraband and to the premises to assess the sufficiency of proof of dominion and control over the narcotics.  In United States v. Zeigler, 994 F.2d 845 (D.C. Cir. 1993), the court of appeals reversed the defendant's narcotics possession conviction, noting that the defendant's relationship to the premises was tenuous and that her access to the controlled substance had not been proven.  Id. at 848 ("The cocaine was locked in a briefcase in a locked [laundry] room in someone else's [adjoining] apartment.  The jury might have concluded that the occupants treated [the adjoining premises] as one apartment and that Zeigler crossed the invisible barrier in the hallway, freely

-9-

moving from one side of the apartment to the other.  Yet the
government presented no evidence, circumstantial or direct, that
Zeigler ever entered the laundry room or had the combination to
the locks on its door or on the briefcase."); see also United
States v. Thorne, 997 F.2d 1504, 1510 (D.C. Cir. 1993) (reversing
a possession conviction and holding that evidence that defendant
lived in the bedroom where most of the drugs were found was
insufficient because he shared the bedroom with at least four
other people, no drugs were in plain view and there was some
evidence showing that defendant kept most of his belongings in
another bedroom).

Here, there was sufficient evidence to show that Johnson had
primary access to the room in which the drugs were found although
others may have occasionally spent time in the bedroom.
Johnson's mother testified that whenever defendant stayed in the
house, he stayed in the bedroom from which the drugs were
recovered.  (Trial Tr., Apr. 6, 2005, vol. 1, at 41); see Thorne,
997 F.2d at 1512 (finding sufficient evidence that defendant had
constructive possession of drugs because he stayed in the bedroom
where most of the drugs were found).  In addition, Johnson's
personal effects were in the room, deepening the connection
between himself and the space in which the drugs had been found.
The presence of personal belongings in the room, although not
conclusive in establishing control, can be an important factor in

-10-

demonstrating constructive possession.  See, e.g., United States v. Dykes, 406 F.3d 717, 721 (D.C. Cir. 2005) (finding that the presence of appellant's personal papers and his mother's testimony that the bedroom in question belonged to him were sufficient to support a conviction for possession of drugs).  Pay stubs, receipts and additional mail matter bearing defendant's name, some going back in time as much as two years, were found in the bedroom from which agents seized the narcotics.  (Trial Tr., Apr. 4, 2005, at 204; Trial Tr., Apr. 5, 2005, at 52.)  Further, the drugs were found near and inside of a bedroom closet in which Johnson's clothing was located.  See Edelin, 996 F.2d at 1241 (holding that because appellant lived in the room and used the dresser in which two personal letters were found, the evidence was sufficient to show dominion and control over the dresser in which the drugs were later found).

In addition to the circumstantial evidence showing Johnson's dominion over the room, the government also established that at least one of the bags of crack cocaine was found in the room in plain view (Trial Tr., Apr. 4, 2005, at 192), and the heroin was found in a clothing boutique bag outside the bedroom's closet. (Trial Tr., Apr. 5, 2005, at 50-51; Trial Tr., Apr. 6, 2005, vol. 2, at 12.)  "[A] defendant's ownership of or residence in premises where drugs are found in plain view [can] be sufficient evidence of dominion and control to establish constructive

-11-

possession." <u>United States v. Dingle</u>, 114 F.3d 307, 311 (D.C.

Cir. 1997). Even putting aside the evidence that one of the bags

of crack cocaine was in plain view, the second bag of crack

cocaine and the shoe box containing heroin were both found in the

bedroom his mother said he used -- the shoe box in a bag outside

of the closet of that bedroom and the additional crack cocaine on

the floor just inside that closet. A rational trier of fact

could have inferred from the physical evidence that although

Johnson and the juvenile were both present in the room at the

time of the search, Johnson had constructive possession of the

contraband in the bedroom.

The tossed gun could also have been fairly probative of

knowing possession of the crack and heroin. The government

argued that the gun was used to protect the drugs that were later

found in Johnson's bedroom. (Trial Tr., Apr. 6, 2005, vol. 1, at

78.) The jury reasonably could have found that the defendant

threw the gun out of his window and did so because he feared that

the gun would be connected to the crack and heroin. <u>See United</u>

<u>States v. Bethea</u>, 442 F.2d 790, 793 (D.C. Cir. 1971) (noting that

an individual's placement of a gun proximate to narcotics can

permit an inference that he constructively possessed the

narcotics). While Johnson argues that even if he did "possess

the marijuana and firearm, it is not reasonable to make the

further inference that he possessed the concealed drugs" (Def.'s

-12-

Mem. at 8), the jury could fairly have drawn this very inference,
concluding that evidence that Johnson disposed of the gun,
coupled with his proximity to the drugs, showed involvement in
narcotics activity that was furthered by the possession of a gun.
See United States v. Gomez, 431 F.3d 818, 820 (D.C. Cir. 2005)
("[A] defendant's proximity to contraband, combined with evidence
linking the accused to an ongoing criminal operation of which
. . . possession of the contraband is a part, may support a
finding of constructive possession.") (internal quotations and
citation omitted); United States v. Dunn, 846 F.2d 761, 763-64
(D.C. Cir. 1988) ("[P]resence, proximity or association may
establish a prima facie case of drug-possession when colored by
evidence linking the accused to an ongoing criminal operation of
which that possession is part.") (citation omitted).

     Each of these individual factors -- Johnson's use of the
bedroom, the presence of his personal effects, the location of
the drugs and his alleged disposal of the gun -- might not be
sufficient alone to find that he possessed the narcotics with
intent to distribute.  However, when viewed *in toto* and in the
light most favorable to the government, this evidence was
sufficient for a reasonable jury to find that Johnson possessed
crack cocaine and heroin with intent to distribute them.

-13-

B.   Handgun conviction

The jury also convicted Johnson of possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A).  For a conviction under § 924(c) to be upheld, the government must have "offered sufficient evidence to support a finding that the defendant knowingly possessed a firearm . . . ."  United States v. Wahl, 290 F.3d 370, 375 (D.C. Cir. 2002).  Once that threshold is met, there must be sufficient evidence that the weapon was used to promote or facilitate an underlying crime.  United States v. Gaston, 357 F.3d 77, 83 (D.C. Cir. 2004).  The government must have provided "a showing of some nexus between the firearm and the drug selling operation" to satisfy the statute's "in furtherance" language.  Id. (quoting United States v. Mackey, 265 F.3d 457, 462 (6th Cir. 2001)).

Johnson argues that because there is insufficient evidence to sustain his conviction on the narcotics counts, the government failed to establish the predicate offense and he should be acquitted for the § 924(c) violation.[2]  He asserts that in any

_____

[2]      Even if vacated narcotics convictions resulted in an inconsistent firearm conviction, an inconsistent verdict, by itself, would afford no basis to overturn a conviction.  See Dunn v. United States, 284 U.S. 390, 393 (1932) ("Consistency in the verdict is not necessary."); United States v. Safavian, 451 F. Supp. 2d 232, 247 (D.D.C. 2006) (citing Dykes, 406 F.3d at 722).  "This is the rule even where the defendant has been convicted of a compound offense but acquitted of a predicate offense that is an element of the compound offense" because "the jury may have acquitted on the predicate offense as a result of lenity even though it was convinced of the defendant's guilt." United States v. Laing, 889 F.2d 281, 288 (D.C. Cir. 1989)

-14-

event, the government did not show that he knowingly possessed

the handgun "in furtherance" of a drug crime.

1.    Knowing possession of a firearm

At trial, the government established that Johnson was found

by the window from which the tee-shirt-wrapped gun and marijuana

appeared to have been thrown (Trial Tr., Apr. 4, 2005, at 50) and

that he was not wearing a shirt when the officers located him.

(Trial Tr., Apr. 4, 2005, at 232.)  As is stated above,

"[c]onstructive possession is established with evidence

supporting a finding that the defendant 'had the ability to

exercise knowing "dominion and control" over the items in

question.'"  Wahl, 290 F.3d at 376 (quoting Morris, 977 F.2d at

619).  The government's evidence that Johnson was found in close

proximity to the window from which the gun appeared to have been

thrown and that, unlike the juvenile also found in the room, he

was bare-chested suggests that Johnson may have had enough

control over the gun to dispose of it in a drastic fashion.  See

Dunn, 846 F.2d at 764 (finding that police officers' view of

appellant throwing things into a different room and later

recovery of narcotics and a revolver within that room were

sufficient to find that appellant constructively possessed the

_____

(citing United States v. Powell, 469 U.S. 57, 65, 67-68 (1984)).
This exercise of lenity is within the recognized prerogative of
the jury, and is thus unreviewable.  See id. ("Jury verdicts are
therefore insulated from review on the grounds of inconsistency
. . . .") (citing Powell, 469 U.S. at 69).

-15-

narcotics); <u>United States v. Buford</u>, 108 F.3d 151, 153 (8th Cir. 1997) (finding that the government had provided sufficient evidence to show that appellant possessed narcotics that were thrown out of the window because, among other evidence offered by the government, police officers saw a bare arm discard the narcotics and appellant was found in the room from which the baggie was thrown without a shirt).  When assessed in connection to his location near the window, this evidence would be sufficient to establish constructive possession.  <u>See</u> <u>United States v. Alexander</u>, 331 F.3d 116, 127 (D.C. Cir. 2003) (finding that proximity coupled with the presence of documents showing ownership was sufficient to show that defendant owned the vehicle where the gun was found and that he constructively possessed the gun).

     2.   In furtherance of a drug trafficking crime

Johnson also argues that the trial evidence insufficiently demonstrated that a firearm was used during and in relation to or possessed in furtherance of a drug trafficking crime.  This prong can be met by showing a nexus between the use or possession of the firearm and the drug trafficking crime.  A number of factors are considered in discerning this nexus, including "whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found."  <u>Gaston</u>, 357

F.3d at 83 (quoting Wahl, 290 F.3d at 376).  Johnson maintains

that "[u]sing or carrying a firearm by tossing it out the window

to avoid its detection by police, does not establish the

necessary nexus between the firearm and the predicate drug

offense" because "[t]hrowing [the gun] out the window neither

facilitated nor potentially facilitated the possession of drugs."

(Def.'s Mem. at 10.)

However, the time and circumstances under which agents found

the gun in this case could suggest that Johnson disposed of the

gun because of its association with the narcotics.  The D.C.

Circuit has "frequently recognized that guns and drugs go

together in drug trafficking, and that evidence of a defendant's

possession of the former can properly be used to show his

connection to the latter."  United States v. McLendon, 378 F.3d

1109, 1113 (D.C. Cir. 2004) (footnote omitted); see also United

States v. Brown, 334 F.3d 1161, 1171 (D.C. Cir. 2003)

("[P]resence of the gun suggests that drugs may have been in the

vicinity as well."); United States v. Conyers, 118 F.3d 755, 757

(D.C. Cir. 1997) (describing connection between guns and drugs);

Dunn, 846 F.2d at 764 ("[Defendant's] connection to the gun

suggests he exercised control over the drugs in the house.").

Because handguns are a common feature of drug trafficking crimes

and because the jury could have found that Johnson threw the

loaded handgun from the room in which the drugs were recovered to

disassociate the gun and the drugs, the jury could have found the requisite nexus between possession of the firearm and the uncontested drug selling operation.  Accordingly, Johnson's motion for judgment of acquittal based on insufficiency of the evidence will be denied.

## II.  FIRST MOTION FOR A NEW TRIAL

In addition to moving under Rule 29 for judgment of acquittal, Johnson moved under Rule 33 for a new trial.  Rule 33 provides that "[u]pon the defendant's motion [that the verdict is against the weight of evidence], the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  A court evaluates a Rule 33 motion differently from how it evaluates a Rule 29 motion because it is not required to consider the evidence in the light most favorable to the government, and it may weigh the testimony and consider the credibility of the witnesses.  United States v. Edmonds, 765 F. Supp. 1112, 1118 (D.D.C. 1991).  A court should grant a Rule 33 motion only if "a serious miscarriage of justice may have occurred."  United States v. Rogers, 918 F.2d 207, 213 (D.C. Cir. 1990) (quoting Tibbs v. Florida, 457 U.S. 31, 38 n.11 (1982)).

Johnson bases his Rule 33 motion on the asserted unfair prejudice created by the testimony of an FBI agent that the agents were present at defendant's home to execute an arrest

warrant.  (Def.'s Mem. at 15.)  However, the introduction of the

FBI agent's statement, which the jury was instructed to

disregard, does not constitute a serious miscarriage of justice.

The agent never identified who the subject of the arrest warrant

was.  (Trial Tr., Apr. 4, 2005, at 41.)  Additionally, the agent

was instructed not to refer to the arrest warrant again in his

testimony.  (Id. at 45.)[3]  Although the jury requested the arrest

warrant during deliberations, it was not provided to them.  Any

prejudice stemming from curiosity about the arrest warrant was

counterbalanced by the strength of the incriminating physical and

behavioral evidence.  Because Johnson has not shown that a new

trial is required in the interest of justice, his first motion

for a new trial will be denied.

III. SECOND MOTION FOR A NEW TRIAL

     Johnson filed a second motion for a new trial which relied

on Rule 33's provision regarding newly discovered evidence.

Generally, a five part test governs Rule 33 motions based on

newly discovered evidence:

> [T]he court should grant a new trial only when
> the following five conditions are met: (1) the
> evidence must have been discovered since the
> trial; (2) the party seeking the new trial
> must show diligence in the attempt to procure

---

[3]     No cautionary instruction was given to the jury
following the agent's statement about the arrest warrant as there
was some concern about calling additional attention to the arrest
warrant testimony.  The defense did not request such an
instruction at the time or move to strike the agent's statement.
(Trial Tr., Apr. 4, 2005, at 43.)

> the newly discovered evidence; (3) the
> evidence relied on must not be merely
> cumulative or impeaching; (4) it must be
> material to the issues involved; and (5) of
> such nature that in a new trial it would
> probably produce an acquittal.

United States v. Lafayette, 983 F.2d 1102, 1105 (D.C. Cir. 1993)

(citing Thompson v. United States, 188 F.2d 652, 653 (D.C. Cir.

1951)).  The disposition of a motion for a new trial is committed

to the sound discretion of the trial court.  Id.; United States

v. Morrow, 412 F. Supp. 2d 146, 157 (D.D.C. 2006).

A.    *Brady* test

Johnson claims that the government failed to disclose

evidence that is favorable to him pursuant to Brady.  The

government is required to disclose all evidence in its possession

that is favorable to a defendant and "material either to guilt or

punishment."  Brady, 373 U.S. at 87.  The traditional five-part

test governing Rule 33 motions shifts "when the newly-discovered

evidence indicates that the original trial was marred by a . . .

Brady violation."  United States v. Kelly, 790 F.2d 130, 133

(D.C. Cir. 1986).  The three components of a true Brady violation

are that "[t]he evidence at issue must be favorable to the

accused, either because it is exculpatory, or because it is

impeaching; that evidence must have been suppressed by the State,

either willfully or inadvertently; and prejudice must have

ensued."  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

-20-

A defendant must establish the materiality of the evidence to show that its suppression was prejudicial. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Morrow, 412 F. Supp. 2d at 158 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). Materiality does not turn on whether the verdict *actually* would have been different, but whether there is a *reasonable probability* that exclusion of the evidence allowed for the imposition of an unfair decision. See Kyles v. Whitley, 514 U.S. 419, 434 (1995) ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."). Although the mere suppression of exculpatory evidence can be indicative of a Brady violation, "there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Strickler, 527 U.S. at 281. An inquiry based on materiality is different than one based on sufficiency of the evidence and one claim may be persuasive while the other is not. See United States v. Smith, 77 F.3d 511, 512-13 (D.C. Cir. 1996) (noting

that materiality is not "gauged by a sufficiency-of-the-evidence
test" and that the sufficiency of the evidence made no difference
if the suppressed evidence undermined the fairness of the trial
and confidence in the verdict).

B.   Newly discovered information

The government failed to turn over evidence that Johnson's
cousin, Cinquan Blakney, owned the heroin that the jury found
that Johnson constructively possessed.   In February 2004, while
Johnson's case was pending, the government filed an affidavit in
support of an application for a wiretap which included a
statement from a confidential informant that "Cinquan Blakney
[Johnson's cousin] confirmed that the heroin seized from 1138
Wahler Place, Southeast, belonged to him."   (Def.'s Mem. in Supp.
of 2d Mot. New Trial ("Def.'s 2d Mem.") at 2.)   Johnson argues
that the informant's statement about Blakney's admission would
have been useful because his trial theory was that he did not
exercise exclusive control over his bedroom and could not have
constructively possessed the drugs.[4]   Blakney's claim would have

_____

[4]      The suppressed Brady evidence must have been admissible
at trial to be material.   United States v. Derr, 990 F.2d 1330,
1335-36 (D.C. Cir. 1993) (holding that the government did not
violate Brady when it failed to disclose a hearsay statement that
would not have been admissible at trial under any exception to
the hearsay rule).   Blakney's statement may have been admissible.
First, the affiant's statement about the confidential informant's
statement might have been an admission by a party opponent
because the affiant's statement would have been offered against
the government and would have been "a statement of which the
party has manifested an adoption or belief in its truth."   Fed.
R. Evid. 801(d)(2); see United States v. Warren, 42 F.3d 647, 655

"bolstered the defense claim that some other family member who had access to the room could have stored the contraband . . . without any active participation from the defendant." (Def.'s 2d Mem. at 6.)

The government does not dispute Johnson's claim that the affidavit was not made available to the defense prior to trial, admitting that "[w]e agree that the government should have provided the information to the defense prior to the trial." (Gov't Opp'n to Def.'s 2d Mot. New Trial ("Gov't Opp'n to 2d") at 2.)  However, the government contends that Johnson is not entitled to a new trial because the information contained in the affidavit was already known to the defense and is not material.

_____

(D.C. Cir. 1994) ("Where, as here, 'the government has indicated in a sworn affidavit to a judicial officer that it believes particular statements are trustworthy, it may not sustain an objection to the subsequent introduction of those statements on grounds that they are hearsay.'") (quoting United States v. Morgan, 581 F.2d 933, 938 (D.C. Cir. 1978) (holding that evidence can be admitted as not hearsay if the government manifested belief in informant's statements by characterizing them as "reliable" in an affidavit)).  The affiant stated that "CS2 has never provided information that has proven to be false" (Def.'s 2d Mot. New Trial, Ex. A., Aff. ¶ 10), suggesting that the government found the confidential informant to be reliable and credible in reporting that Blakney made a statement.  While Blakney's statement is hearsay imbedded within the affiant's non-hearsay, Blakney's statement might have been admissible as a statement against interest, Fed. R. Evid. 804(b)(3), if Blakney possessed a live fifth amendment privilege not to testify, Fed. R. Evid. 804(a)(1), (2), and corroborating circumstances clearly indicated its trustworthiness.  Fed. R. Evid. 804(b)(3).  Cf. Edelin, 996 F.2d at 1242 (D.C. Cir. 1993) (holding that there were no independent indicia of trustworthiness for statements of a witness which were made to defense counsel when witness could have a reason for fabrication).

-23-

Although the government's wrongfully withheld information

concerning Blakney's admission would have been helpful to the

defense, this evidence does not fully exculpate Johnson, it lacks

materiality, and its non-disclosure does not create a reasonable

probability of a different result.  See United States v. Derr,

Crim. Action No. 91-0068, 1991 WL 257977, at *2 (D.D.C. Nov. 20,

1991), aff'd in relevant part, rev'd in part, 990 F.2d 1330 (D.C.

Cir. 1993).

As to the first Brady factor under Strickler, the withheld

evidence while helpful, is not completely exculpatory.  If the

confidential witness' statement is presumed credible, Blakney was

the actual owner of the heroin.  Johnson argues that the

affidavit would support the theory that a family member had

simply left the drugs in the room and that Johnson did not

actually own the drugs.  (Def.'s 2d Mem. at 5.)  However, the

affidavit does not undercut the government's theory of

constructive possession.  In its closing argument, the government

stated that the heroin and crack cocaine had been found in

defendant's room and that he had "the power and intent to control

[the drugs] if he wanted to. . . .  [I]f circumstantially you

believe he knew they were in there, . . . that was his room, he

had possession of that room, you can find him or you must find

him guilty of constructively possessing the drugs."  (Trial Tr.,

Apr. 6, 2005, vol. 2, at 26-27.)  The evidence that Blakney owned

the heroin supports the government's acknowledgment that another
person could have given Johnson the drugs to control.  "If
someone brought those drugs in and said I'm leaving these in your
room, and when I come back, I want you to give them back to me,
watch them for me . . . . Does he know about them?  Absolutely.
And if he knows they are there and intends to give them back to
that person, he's just as guilty as the person who brought them
in there."  (Trial Tr., Apr. 6, 2005, vol. 2, at 70-71.)  While
this evidence is helpful to Johnson, it does not exculpate him.
See Strickler, 527 U.S. at 283.

As to the second Brady factor under Strickler, the affidavit
was suppressed by the government.  The government argues that the
information was not suppressed, claiming that Johnson knew of
Blakney's involvement for two reasons.[5]  First, "[g]iven the
testimony of the government's witness concerning the monetary
value of a half a kilogram of heroin, it would be virtually
inconceivable that Blakney, or any other drug dealer, would store

---

[5]      "Evidence is not 'suppressed' if the defendant either
knew, or should have known, of the essential facts permitting him
to take advantage of any exculpatory evidence."  DiSimone v.
Phillips, 461 F.3d 181, 197 (2d Cir. 2006) (quoting Leka v.
Portuondo, 257 F.3d 89, 100 (2d Cir. 2001).  A defendant may not
claim a Brady violation when he knows that the government has
undisclosed exculpatory evidence that he has not requested, and
then wait until after a conviction to spring it upon the
government in order to obtain a new trial.  See Derr, 990 F.2d at
1335 ("Brady provides no refuge to defendants who have knowledge
of the government's possession of possibly exculpatory
information, but sit on their hands until after a guilty verdict
is returned.").

the heroin in the bedroom of an unsuspecting relative." (Gov't
Opp'n to 2d at 4.)   Second, the affidavit citing Blakney's
statement noted that Blakney's mother told Johnson's mother that
Johnson "has to take his beef" for the drugs. (Def.'s 2d Mot.
New Trial, Ex. A, Aff. ¶ 45.)   Neither of these reasons provides
sufficient proof that defendant knew that the government had
information involving Blakney's culpability.   The government
cites Derr as support for its argument that the information was
not suppressed.   However, in Derr, defense counsel demonstrated
knowledge of the exculpatory evidence through his trial
interrogation.   Derr, 990 F.2d at 1335.   There is no proof that
Johnson was put on notice that Blakney had provided an admission
to a government informant.   (Def.'s Reply to Gov't's Opp'n to
Def.'s 2d Mot. for a New Trial ("Def.'s Reply") at 6); see United
States v. Payne, 63 F.3d 1200, 1209 (2d Cir. 1995) (holding that
even if defendant knew that a witness has initially pled not
guilty, he had "no apparent reason to believe" that she had filed
an affidavit).

Finally, though, there is not a reasonable probability that
disclosing the evidence would have resulted in a verdict of
acquittal.   The evidence of Blakney's ownership would not have
defeated the government's claim that Johnson knew of the drugs
and had control over them.   Blakney admitted only to ownership of
the heroin.   The jury could reasonably have found that Johnson's

-26-

removal of the gun and the marijuana and possession of the crack

cocaine would buttress a further finding that defendant

constructively possessed the heroin.  Additionally, the jury

could reasonably have been unpersuaded that Johnson

constructively possessed the crack cocaine but not the heroin

where both substances were found under similar circumstances.

The district court in <u>Derr</u>, which faced a similar factual record,

denied defendant's motion for a new trial[6] claiming that "Derr

presented the evidence that forms the core of [the exculpatory

statement] to the jury, including evidence of different

individuals living in the apartment . . . .  The jury made their

determination with access to that information and to that theory

of the case." <u>Derr</u>, 1991 WL 257977, at *3.  The D.C. Circuit

affirmed appellant's drug possession conviction noting that the

evidence "does nothing to impugn the significance of the physical

evidence presented in the government's case-in-chief -- the birth

certificate, the keys found near the bed where Derr was sleeping,

and Derr's aborted motion toward the keys as he was leaving the

apartment -- all potential indicators that Derr controlled the

drugs and the gun." <u>Derr</u>, 990 F.2d at 1336.  Similarly, the jury

---

[6]     The district court appeared to rely on the stricter
test under Rule 33 that the evidence would "probably produce an
acquittal," rather than the reasonable probability prong under
<u>Bagley</u>. <u>Derr</u>, 1991 WL 257977, at *2.  It is not clear that
utilizing the <u>Bagley</u> articulation would have made a difference in
the disposition.  Indeed, the D.C. Circuit, in upholding the
district court in <u>Derr</u>, relied on the factors announced in
<u>Bagley</u>. <u>Derr</u>, 990 F.2d at 1335.

could have inferred that the presence of Johnson's clothing and paperwork bearing his name supported a theory that he constructively possessed all the items in the bedroom including all the narcotics.

Because the government's theory of constructive possession did not require that Johnson actually own the heroin, Blakney's admission would probably not be material to the outcome of the trial and its suppression does not undermine confidence in Johnson's trial disposition.   Thus, because Johnson's <u>Brady</u> claim does not warrant a new trial, Johnson's second motion for a new trial will be denied.

<u>CONCLUSION AND ORDER</u>

The evidence, when viewed in the light most favorable to the government, permitted a reasonable jury to find beyond a reasonable doubt the essential elements of all the offenses.   No new trial is warranted by the stricken testimony of the FBI agent, or by the government's failure to disclose potentially favorable evidence that was not material.   Therefore, it is hereby

ORDERED that the defendant's motion for judgment of acquittal, and alternatively, for a new trial [34] be, and hereby is, DENIED.   It is further

-28-

ORDERED that the defendant's second motion for a new trial based on the government's failure to disclose exculpatory evidence [40] be, and hereby is, DENIED.

SIGNED this 28th day of February, 2007.

RICHARD W. ROBERTS
United States District Judge